**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

JWAN DWAIN WASHINGTON,      )
                                      )
                Petitioner,   )
v.                               )      Case No. CIV-09-139-HE
                                      )
RANDY WORKMAN, WARDEN,     )
                                      )
                Respondent.  )

**<u>REPORT AND RECOMMENDATION</u>**

Petitioner, Jwan Dwain Washington, appearing *pro se*, has filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 challenging his state court conviction on various federal constitutional grounds. It is recommended that his petition be denied.

## I.   <u>Factual Background</u>

On June 16, 2006, Petitioner shot Gerald Jones twice, once in the shoulder and once in the head. Jones died as a result of the gunshot wounds.

According to testimony at the preliminary hearing, Jones owed Petitioner money for a television and Jones had refused to either pay Petitioner for the television or return the television to Petitioner. *See* Record [Doc. #12], Preliminary Hearing Transcript (PH Tr.) at 9-11, 14-15.

After the shooting, Petitioner returned to his home, with the television. He told his girlfriend, Amanda Giles, that he had gone over to Jones' house to get the television or the money and gotten into an argument with Jones. He said that Jones and Petitioner started fighting in Jones' front yard, and then Jones suddenly ran inside his home. While Jones was

inside, Petitioner retrieved a gun from the trunk of his car.  Petitioner told Giles that Jones came back outside with his hand behind his back and told Petitioner "I got something for you."  Petitioner then fired shots at Jones.  He first shot Jones in the shoulder and then fired again, hitting Jones in the head.  *See* PH Tr. at 14-17.

Petitioner relayed this same story to police during a videotaped interview following his arrest.  *See id.* at 41-42, 44.[1]  *See also* Record at 4, Affidavit of Probable Cause.  The police did not find any weapon on Jones' body, in the yard or in his home.  *See id.* at 50-51.

## II.   Case History

Following his arrest, Petitioner was charged with Murder in the First Degree.  *See* Record [Doc. #12] at 1.  The Information read as follows:

> Count 1    21 O.S. § 701.7 - MURDER IN THE FIRST DEGREE a FELONY, on or about the 16th day of June 2006, by deliberately and intentionally taking away the life of a human being, did then and there wilfully, unlawfully and feloniously without authority of law, effect the death of Gerald Nathaniel Jones by shooting him in the head and chest with a Hi-Point .40 caliber handgun, then and there and thereby inflicting certain mortal wounds in the body of said Gerald Nathaniel Jones from which mortal wounds the same did languish and die on the 16th day of June 2006.
>
> This crime is punishable by death, imprisonment for life, or imprisonment for life without parole.

*See id.*  Petitioner entered a plea of guilty to the charge of Murder in the First Degree, in the District Court of Comanche County, State of Oklahoma, Case No. CF-2006-283.  On

---

[1]The videotape is not included in the record before this Court.

January 29, 2007, the Honorable Keith B. Aycock, District Judge, Comanche County, sentenced Petitioner to life imprisonment.

Petitioner then moved to withdraw his plea.  Following a hearing on March 6, 2007, Petitioner's motion was denied. After being granted the right to file an appeal out of time, Petitioner filed a Petition for Writ of Certiorari before the Oklahoma Court of Criminal Appeals (OCCA).  *See* Petition, Attachment 2, Brief of Petitioner.  On October 24, 2008, the OCCA denied the Petition for Writ of Certiorari and affirmed Petitioner's conviction and sentence. *See* Petition, Attachment 1, OCCA Summary Opinion Denying Certiorari; *see also* Response, Exhibit 1 (same).

## III.   **Grounds for Habeas Corpus Relief**

Petitioner brings three grounds for federal habeas corpus relief.  In Ground One, Petitioner claims the trial court erred in accepting his guilty plea without a sufficient factual basis.  In Ground Two, Petitioner claims the trial court erred in denying his motion to withdraw plea because his guilty plea was not intelligently made, but was the result of ignorance or confusion and without deliberation.  In Ground Three, Petitioner claims he was denied the right to conflict-free representation at the hearing on his motion to withdraw plea. Petitioner raised each of these claims before the OCCA, and the OCCA denied his claims on the merits.  *See* OCCA Summary Opinion.

IV.     **Standard of Review**

Where, as in this case, a petitioner's claims were adjudicated on their merits by the

state courts, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) standards

of review apply, *see* 28 U.S.C. § 2254(d), and provide that habeas relief shall not be granted

unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in the State court proceeding.

*Id*.

The threshold inquiry under the AEDPA is whether there is clearly established federal

law, as determined by the holdings of the Supreme Court, governing the petitioner's claim.

*See House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).  If no such clearly established

federal law exists, habeas relief must be denied.  *Id*. ("The AEDPA 'requires federal habeas

courts to deny relief that is contingent upon a rule of law not clearly established at the time

the state court conviction became final.'") (*quoting Williams v. Taylor*, 529 U.S. 362, 380)

(2000)).

If clearly established federal law does exist, the court may proceed with analysis of

the petitioner's claim by asking whether the state court's decision is either contrary to or an

unreasonable application of such law.  *See Hicks v. Franklin*, 546 F.3d 1279, 1283 (10th Cir.

2008) ("If there is clearly established federal law, we then consider whether the state court

4

decision was contrary to or involved an unreasonable application of it.") (citation omitted). Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning. *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result – not its rationale – is 'legally or factually unreasonable'").

A state court decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams*, 529 U.S. at 405-406. It is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be "diametrically different," "opposite in character or nature," or "mutually opposed" to the Supreme Court decision itself. *Id*. at 406.

A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "AEDPA's conception of objective unreasonableness lies 'somewhere between *clearly* erroneous and unreasonable to all reasonable jurists.'" *House*, 527 F.3d at 1019 (*quoting Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)). "Thus, 'only the most serious

misapplications of Supreme Court precedent will be a basis for relief under § 2254.'" *Id.* (*quoting Maynard*, 468 F.3d at 671)).

The AEDPA standard also affords a presumption of correctness to any determinations of fact by the state courts. *See* 28 U.S.C. § 2254(e)(1); *see also Smith v. Workman*, 550 F.3d 1258, 1265 (10th Cir. 2008) (citation omitted). A petitioner must rebut this presumption of correctness by clear and convincing evidence. *Id.*

## V.   Analysis

### A.   Ground One – Factual Basis of the Plea

Petitioner claims the trial court erred in accepting his guilty plea without a sufficient factual basis. According to Petitioner, the factual basis of the plea is insufficient because not all elements of the offense of first degree murder were established.

Under Oklahoma law, the elements of first degree murder are:

> First, the death of a human;
>
> Second, the death was unlawful;
>
> Third, the death was caused by the defendant; and
>
> Fourth, the death was caused with malice aforethought.

*See* Oklahoma Uniform Jury Instructions, Criminal, 2nd Edition, OUJI-CR (2d), No. 4-61; *see also* Okla. Stat tit. 21, § 701.7(A). Petitioner challenges the sufficiency of the factual basis of the guilty plea as to the second and fourth elements of the offense. Petitioner claims that while he admitted that he intended to shoot the victim, he never indicated that he intended to kill the victim or that any such intent was deliberately formed. Petitioner contends that

"[h]e was never asked if the shooting was in self-defense or in a heat of passion" and that his "silence on these critical issues raises serious questions about whether his decision to plead guilty, rather than take the issues of self-defense and/or heat of passion to a jury, was *intelligently* made." *See* Petition, Attachment 2, Brief of Petitioner at 5-6 (emphasis in original).

Rejecting this claim on certiorari appeal, the OCCA stated: "We find in Proposition I that a sufficient factual basis existed and the trial court did not abuse its discretion in accepting Washington's guilty plea." *See* OCCA Summary Opinion at 1-2.  In support of this finding the OCCA stated:

> Washington confessed to his girlfriend and police and told the trial court orally and in writing that he intentionally shot the victim and caused his death.  This is sufficient to establish each element of first degree murder.

*See id*. at 2, n. 1.  The factual findings made by the OCCA are presumed correct for purposes of federal habeas review.  *See* 28 U.S.C. § 2254(e)(1); *see also Holt v. Ward*, 181 Fed. Appx. 710, (10th Cir. May 18, 2006) ( unpublished op.) (state court's factual findings that petitioner knowingly, voluntarily and intelligently pled guilty and that there was an adequate factual basis for the plea were entitled to presumption of correctness that may be rebutted only by clear and convincing evidence pursuant to 28 U.S.C. § 2254(e)(1)).  Petitioner has not rebutted the state court's factual findings by clear and convincing evidence.

Respondent contends that the requirement for a sufficient factual basis for a guilty plea raises only a matter of state law that is not cognizable in a federal habeas proceeding.  *See* Response at 6-7.  Respondent further claims that under United States Supreme Court

precedent, courts are only required to establish a factual basis for a guilty plea when a "defendant claims his factual innocence while pleading guilty." *See* Response at 6 (*citing North Carolina v. Alford*, 400 U.S. 25, 37-39 (1970)). Respondent claims Petitioner did not claim factual innocence at the time he entered his guilty plea.

Respondent is correct that Petitioner's challenge to the sufficiency of the factual basis of a guilty plea does not state a claim of federal constitutional error. *See Green v. Koerner*, 312 Fed. Appx. 105, 108 (10th Cir. Feb. 12, 2009) (unpublished op.) ("[Petitioner's] contention that the state court lacked a factual basis to support her plea does not, by itself, present a basis to invalidate her plea in a federal habeas corpus action."); *Lancaster v. Barnes*, No. 91-4049, 1992 WL 11324 at *1 (10th Cir. Jan. 23, 1992) (unpublished op.) ("Courts are not required by the federal constitution to establish a factual basis for a guilty plea."). Instead, a factual basis to support a guilty plea in a state court proceeding is a matter of state law. *Berget v. Gibson*, No. 98-6381, 1999 WL 586986 at *5 (10th Cir. Aug. 5, 1999) (unpublished op.). Only if the defendant claims his factual innocence while pleading guilty is a state court required by the federal constitution to establish a factual basis for a plea. *Id.* (*citing Alford*, 400 U.S. at 37-39); *see also Perkis v. Sirmons*, 201 Fed. Appx. 648, 651 (10th Cir. Oct. 24, 2006) (unpublished op.) ("[U]nless a defendant claims factual innocence while pleading guilty, there is no federal constitutional requirement for the district court to ascertain a factual basis for the plea."); *Walker v. Champion*, No. 97-6402, 1998 WL 712588 at *2 (10th Cir. Oct. 13, 1998) (unpublished op.) ("Absent a protest of innocence at the time

8

a plea is entered, the magistrate judge properly concluded the trial court has no constitutional duty to establish a factual basis for his plea.").

In support of Ground One, Petitioner does not claim he asserted factual innocence during guilty plea proceedings. And, the record demonstrates Petitioner did not equivocate whatsoever in entering his guilty plea. In his written Plea of Guilty Summary of Facts form, Petitioner answered the question as to the factual basis for his plea by stating: " On June 16, 2006, I intentionally shot Gerald Jones and caused his death." *See* Record at 117. Furthermore, at sentencing, Petitioner made the following admissions to the trial court:

| | |
|---|---|
| THE COURT: | All right. Mr. Washington, would you tell me what you did, sir, that leads you to believe that you committed that crime [of Murder in the First Degree]. |
| MR. HERRING: | May I inquire, Your Honor? |
| THE COURT: | Yes, sir, please do. |
| MR. HERRING: | Mr. Washington, you were present in Comanche County, Oklahoma, on the 16th day of June, 2006; is that correct? |
| MR. WASHINGTON: | Yes, sir. |
| MR. HERRING: | And on that date, you intentionally shot a Gerald Nathaniel Jones in both the head and the chest; is that correct? |
| MR. WASHINGTON: | Yes, sir. |
| MR. HERRING: | All right. And as a result of that shooting Mr. Jones died; is that correct? |
| MR. WASHINGTON: | Yes, sir. |

9

| MR. HERRING: | And those actions were your free and voluntary acts here in Comanche County, Oklahoma; is that correct? |
|---|---|
| MR. WASHINGTON: | Yes, sir. |

*See* Transcript of the Judgment and Sentencing (Sentencing Tr.) (January 29, 2007) at 13-14.

Because Petitioner did not make a claim of factual innocence during the guilty plea hearing, there is no federal constitutional issue concerning the factual basis of his guilty plea and Ground One of the Petition should be denied.

### B.     Ground Two – Voluntariness of the Plea

Petitioner claims in Ground Two that the plea was not voluntary because it was not made intelligently.  Petitioner again relies on the fact that the evidence may have supported defenses of manslaughter (heat of passion) or self-defense.  As stated in his brief to the OCCA, Petitioner contends that he "entered a plea without realizing that his conduct may not actually have fallen within the first degree murder charge, with a legal and factual misunderstanding of his options, and without sufficient time for deliberation."  *See* Petition, Attachment 2, Brief of Petitioner at 10.

Rejecting this claim on certiorari appeal, the OCCA held: "We find in Proposition II that Washington's plea was knowing, intelligent and voluntary."  *See* OCCA Summary Opinion at 2.  In a footnote in support of this finding, the OCCA stated:

> Washington admits his plea was voluntary, but argues it was not intelligent. The record shows that his attorneys reviewed his videotaped confession and discussed the case with him, recommending he accept a plea to the minimum sentence. The record does not support Washington's claims that he might have

had defenses of either self-defense or manslaughter had these options been discussed.

*See id*. at 2, n. 2.

United States Supreme Court precedent provides that a defendant's plea cannot be voluntary "in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (internal quotations and citation omitted). In *Henderson*, the Court determined the defendant's guilty plea to a charge of second degree murder was not voluntary because the defendant was never informed that intent to cause the death of the victim was an element of the offense. Significant to the Supreme Court's holding was a specific factual finding that the defendant "was not advised by counsel or court, at any time, that an intent to cause the death or a design to effect the death of the victim was an essential element of Murder 2nd degree." *Id*. at 641. The Supreme Court underscored the significance of this factual finding as a limitation on the scope of its holding:

> Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. *This case is unique because the trial judge found as a fact that the element of intent was not explained to respondent.*

*Id*. at 647 (emphasis added).

11

"In order to establish an involuntary plea under *Henderson*, [the Tenth Circuit] require[s] a petitioner to: "(1) show that the [intent] element was a critical element of [the charge]; (2) overcome the presumption that his attorney explained this element to him at some other time prior to his guilty plea; and (3) demonstrate that, prior to his guilty plea, he did not receive notice of this element from any other source." *Allen v. Mullin*, 368 F.3d 1220, 1241 (10th Cir. 2004) (*quoting Miller v. Champion*, 161 F.3d 1249, 1255 (10th Cir. 1998)). As to the second requirement, the presumption will not be indulged unless a factual basis exists in the record to support it. *Id.*

Addressing the first requirement, the Court presumes that the intent element is a critical element of the first degree murder charge. *See, e.g., Allen*, 368 F.3d at 1242 (addressing "malice aforethought" as defined under Oklahoma law and stating "as to [the] first requirement, we do not gainsay that the intent element of a criminal offense is a critical element of the charge").

The Court finds as to the second requirement that Petitioner has not overcome the presumption that trial counsel explained to him the intent element of malice aforethought.[2] As the Tenth Circuit found significant in *Allen* and as applicable here, Petitioner "was charged by way of Information reciting the offense and its included intent element." *Allen*,

---

[2] Under Oklahoma law, "'malice aforethought'" means a deliberate intention to take away the life of a human being." *See* OUJI-CR (2d) No.4-62; *see also Allen*, 368 F.3d at 1241-1242, 1242 (explaining element of malice aforethought under Oklahoma law and stating that "[p]ut simply, malice aforethought denotes a deliberate killing where the intent to kill may be formed right up to the commission of the act."). The Information did not expressly use the phrase "malice aforethought" but did provide that First Degree Murder is "deliberately and intentionally taking away the life of a human being." *See* Record at 1.

368 F.2d at 1242.  In addition, Petitioner answered affirmatively to questions in the Plea of Guilty Summary of Facts form asking (1) whether he understood the nature and consequences of the proceedings; and (2) whether he received a copy of the Information and read its allegations.  *See* Record at 115.

Moreover, "[i]n the ordinary case a correct statement of the law from the trial judge will assuage any doubts that a defendant has not received notice of the nature of the charges against him."  *Hicks*, 546 F.3d at 1285.  The record of the plea hearing demonstrates the state trial court adequately explained the nature of the first degree murder charge and its elements:

> THE COURT:  Okay.  And I see here from the [Plea of Guilty Summary of Facts] form, and from also the Information that's been filed in this case, that you're charged with the felony offense of Murder in the First Degree that's alleged to have occurred here in Comanche County on or about the 16th day of June, 2006, involving the death of one Gerald Nathaniel Jones, and the use of a 40 caliber handgun to shoot him in both the head and in the chest, and as a result he died on that same date, the 16th of June, 2006.  And, it is alleged, sir, that you were the person who shot him on both occasions and that you did so wilfully, unlawfully and feloniously without any authority of law.  Do you understand that this is the allegation that has been made against you, Mr. Washington?
>
> MR. WASHINGTON:  Yes, sir.

*See* Sentencing Tr. at 5-6.

Here, Petitioner does not directly challenge his understanding of the intent element of the first degree murder charge.  Instead, Petitioner claims he did not understand that the

defenses of manslaughter and/or self-defense were potentially available to him.  However, the record demonstrates that Petitioner expressly represented that his counsel had advised him regarding any possible defenses to the charge:

> THE COURT:     All right.  Now, Mr. Herring and Mr. Berry are both here and they are your attorneys, and have you had a chance to talk over this charge with them and had their advice regarding any defense that you might have to these charges?
>
> MR. WASHINGTON:     Yes, sir.
>
> THE COURT:     All right.  And do you believe that your lawyers have effectively assisted you in this case and are you satisfied with their advice?
>
> MR. WASHINGTON:     Yes, sir.

See id. at 11; *see also* Record at 116, Plea of Guilty Summary of Facts form, ¶ 16.  As the Tenth Circuit stated in *Allen*, an admission that the defendant has assisted his counsel in any defenses he might have had to the charge is a statement that "necessarily includes . . . an assurance that [counsel] had reviewed with [defendant] the intent element of the charge." *Id*. at 1242.

On the record presented, Petitioner is presumed to have understood the nature of the charge against him as well as any possible defenses.  In attempting to overcome this presumption, Petitioner claims he first met his attorney, Mr. Herring, on the day he entered his guilty plea.  According to Petitioner, Mr. Herring and another attorney, Jim Berry, watched the videotape of Petitioner's confession with him and then advised Petitioner that this was "either life without or life with parole, possibility case."  *See* Transcript of Hearing

to Withdraw Plea of Guilty at 4.  Petitioner claims he "didn't have a chance to speak to nobody about it" before signing his plea papers and he signed the papers because Mr. Herring told him the plea was the only way Petitioner would ever "get back into the world . . . ."  *Id.*

The guilty plea hearing demonstrates the trial court thoroughly discussed with Petitioner the sentencing options, a life sentence being the minimum punishment he faced.  *See* Sentencing Tr. at 6-8, 13.  Accepting Plaintiff's factual allegations, they are insufficient to overcome the presumption that he was properly advised of the nature of the charge against him and any possible defenses.[3]

Finally, Petitioner fails to demonstrate that he was not put on notice of the intent element from other sources.  As previously discussed, the Information sets forth the elements of the offense, and at the guilty plea hearing the trial court addressed both the Information and the Guilty Plea Summary of Facts form in advising Petitioner of the nature of the charged offense.  *See* Sentencing Tr. at 5-6. And, as set forth above, Petitioner stated at the plea hearing and responded affirmatively in the Guilty Plea Summary of Facts form that he had consulted with counsel regarding possible defenses and that counsel had effectively assisted him.  *See* Record at 116-117, ¶¶ 16-17; Sentencing Tr. at 11.  Moreover, the Preliminary Hearing testimony addressed issues related to manslaughter and self-defense.  *See* PH Tr. at 15, 42, 45-49.  The testimony further supports a finding that Petitioner was

---

[3]Petitioner also contends that under Oklahoma law the minimum punishment for first degree manslaughter is four years, further demonstrating that his plea to a life sentence could not have been intelligent.  This argument ignores the fact, however, that Petitioner was never charged with the lesser included offense of manslaughter.  Therefore, the issue of manslaughter was available to him only as a defense, not as an alternative basis for conviction.  Accordingly, the lesser punishment would not have been an available option.

aware of the defenses available to him.  The defenses of self-defense and manslaughter, under the circumstances of this case, were not complicated and there is no indication Petitioner did not have the ability to understand the availability of these defenses.  *Compare Allen*, 368 F.3d at 1242 (noting that "malice aforethought" "is not a difficult concept for the ordinary person to grasp, particularly when assisted by legal counsel").  The record as a whole, therefore, belies Petitioner's claim that he did not understand the intent element of the First Degree Murder charge or that defenses of manslaughter and/or self-defense might be available to him.

In sum, Petitioner has failed to demonstrate the plea was not entered intelligently and voluntarily.  The OCCA's determination that Petitioner intelligently entered his guilty plea is entitled to AEDPA deference, and Ground Two of the Petition should be denied.[4]

## C.    Ground Three – Right to Conflict-Free Representation

In his third and final ground for relief, Petitioner claims he was denied his Sixth Amendment right to conflict-free representation at the hearing on his motion to withdraw plea.[5]  Petitioner claims an actual conflict of interest existed based on two circumstances.

---

[4]The Court defers to the OCCA's decision unless its result – not its rationale – is legally or factually unreasonable.  *See Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999); *Gipson v. Jordan, supra* 376 F.3d at 197.  For that reason, the Court does not need to address the accuracy of the OCCA's secondary finding that the record did not support Petitioner's claim that he might have had defenses of either self-defense or manslaughter.  *See* OCCA Summary Opinion at 2, n. 2.  Whether the record supports such defenses is not the determinative inquiry.  Instead, the issue is whether Petitioner was adequately apprised that these defenses might be available so that he could make an intelligent decision as to whether to enter a guilty plea.

[5]In the habeas petition, Petitioner appears to raise a Sixth Amendment claim based on additional and different facts from those relied upon in support of the claim raised before the OCCA.  Petitioner conclusorily states the following:

(continued...)

First, Petitioner claims Don Gutteridge, the attorney who represented Petitioner at the hearing on his motion to withdraw plea, had previously appeared on Petitioner's behalf at "various stages" prior to the hearing and that Mr. Gutteridge's prior representation prevented him from effectively representing Petitioner at the hearing.[6]   Second, Petitioner claims Mr. Gutteridge was friends with Mr. Herring and Mr. Berry, the attorneys representing Petitioner at the time he entered his guilty plea.   This Court's review of the record shows Petitioner made no objection at the hearing on the motion to withdraw plea or at any other stage of the proceedings regarding any conflict of interest by his attorney.

---

[5](...continued)
On November 21, 2006, I asked the District Judge to have access to the law library, in which I was represented by Mr. Don Gutteridge.  Mr Gutteridge told the District Judge he wasn't my attorney.  I was trying to receive access to the law library because of lack of representation.

*See* Petition at 9, Ground Three.  If the Court were to construe the Petition as raising an additional Sixth Amendment claim, that claim would be unexhausted and require dismissal of the Petition as a mixed petition.  *See Rose v. Lundy*, 455 U.S. 509, 522 (1982).  However, Petitioner has attached to his Petition a copy of his certiorari appeal brief before the OCCA and the Petition recites as "Ground Three" verbatim the heading used in his brief before the OCCA.  For this reason, the Court construes the Petition as raising only the exhausted claim raised in state court proceedings before the OCCA.  The conclusory facts recited in the Petition in support of Ground Three are insufficient to merit construction as an additional or different claim.

[6]Petitioner does not identify with specificity these "various stages" but does assert the "most recent" appearance by Mr. Gutteridge was on November 21, 2006, at Petitioner's formal arraignment.  *See* Petition, Attachment 2, Brief of Petitioner at 12; *see also* Record at 72, Court Minute (Nov. 21, 2006).  The OCCA's factual finding, presumed correct, references only the appearance of Mr. Gutteridge at the arraignment.  Petitioner has not presented evidence to rebut the OCCA's finding.

The OCCA rejected Petitioner's claim that an actual conflict existed, finding that Petitioner had "conflict-free counsel for his motion to withdraw plea." *See* OCCA Summary Opinion at 2.  In support of this finding, the OCCA stated:

> While counsel at the motion to withdraw had appeared at Washington's arraignment on behalf of his attorney of record, there is no indication he ever discussed the merits of Washington's case with him, and he was not involved in plea negotiations or Washington's guilty plea.

*See id.* at 2, n. 3.

Respondent contends Petitioner has failed to overcome by clear and convincing evidence the factual finding of the OCCA that no conflict of interest existed.  *See* 28 U.S.C. § 2254(e)(1).  Respondent further argues that Petitioner has not cited to controlling Supreme Court precedent to support his claim that a conflict of interest is inherent or presumed under the circumstances argued.  Respondent contends, therefore, that Petitioner's third ground for relief should be denied.

In direct appeal proceedings before the OCCA, the United States Supreme Court's decision in *Cuyler v. Sullivan*, 446 U.S. 335 (1980), served as the standard governing Petitioner's claim that he had been denied his Sixth Amendment right to conflict-free representation.[7]

---

[7]On direct appeal, both Petitioner and the OCCA cited only state law in addressing this claim, primarily relying upon *Carey v. State*, 902 P.2d 1116 (Okla. Crim. App. 1995).  In *Carey*, the OCCA found the petitioner had been denied his Sixth Amendment right to conflict-free representation where the petitioner alleged his court-appointed attorney coerced him into pleading guilty and that same counsel represented the petitioner at his hearing on the motion to withdraw the plea.  To determine whether an actual conflict existed, the OCCA relied upon the United States Supreme Court's decision in *Cuyler v. Sullivan*, 446 U.S. 335 (1980). Applying *Sullivan*, the OCCA
(continued...)

In *Sullivan*, the Supreme Court held that in order to establish a Sixth Amendment violation based on a conflict of interest, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Sullivan*, 446 U.S. at 348. *Sullivan* was a case involving multiple representation, where two privately retained attorneys represented one defendant at trial while also representing two other defendants criminally charged from the same incident but tried separately. In reviewing the defendant's ineffective assistance of counsel claim, the Supreme Court determined that prejudice would be presumed only upon the defendant showing: (1) that counsel "actively represented conflicting interests," as opposed to merely potential or hypothetical conflicts; and (2) that an "actual conflict of interest affected his lawyer's performance." *Sullivan*, 446 U.S. at 350.

The Supreme Court has not extended *Sullivan* beyond the context of multiple concurrent representations. *See Mickens v. Taylor*, 535 U.S. 162, 176 (2002) ("Whether *Sullivan* should be extended to [cases outside the multiple concurrent representation context] remains, as far as the jurisprudence of this Court is concerned, an open question."). Indeed in *Mickens*, the Court emphasized that "the language of *Sullivan* itself does not clearly establish, or indeed support, [an] expansive application." *Mickens*, 535 U.S. at 175. Instead,

---

[7](...continued)
found the petitioner's court-appointed attorney acted as the petitioner's adversary at the hearing, defending against the petitioner's claims of coercion, and petitioner, therefore, "had no attorney taking part in promoting his interests which were in actual conflict with the interests of [the attorney]." *Carey*, 902 P.2d at 1118.

    By citation to the OCCA's *Carey* decision, the record shows that Petitioner relied upon *Sullivan* in raising his claim on direct appeal and the OCCA applied the standards of *Sullivan* in rejecting the claim on direct appeal.

*Sullivan* is premised on the "high probability of prejudice arising from multiple concurrent representation, and the difficulty of proving that prejudice." *Id*. As the Supreme Court cautioned, "[n]ot all attorney conflicts present comparable difficulties." *Id*. at 175. Accordingly, there is no clearly established federal law, as determined by the Supreme Court of the United States, applying the *Sullivan* standard to other kinds of conflicts.

Relying on a lack of "clearly established federal law," the Tenth Circuit has rejected claims like that raised by Petitioner where a conflict of interest has been alleged on facts falling outside the scope of *Sullivan*. *See, e.g., Watson v. Poppell*, 154 Fed. Appx. 712, 715 (10th Cir. Nov. 16, 2005) (unpublished op.) (under Tenth Circuit precedent, "no inherent conflict exists merely because appellate and trial counsel are both employed by the Public Defender's office"); *Montoya v. Lytle*, 53 Fed. Appx. 496, 498 (10th Cir. Nov. 20, 2002) (unpublished op.) (*Sullivan* standard has never been extended by the Supreme Court to cases involving successive, rather than concurrent, representation and therefore, no clearly established federal law exists that would require reversal of a conviction on a mere showing of a conflict of interest involving successive representation); *Berget v. Gibson*, *supra*, 1999 WL 586986 at * 13 (rejecting habeas claim of ineffective assistance of appellate counsel based on alleged conflict of interest where both trial and appellate counsel worked for the same public defender's office and were not only colleagues, but friends who regularly worked together; petitioner "failed to cite a single Supreme Court case that supports his contentions" and therefore failed to demonstrate state court's determination of issue was contrary to clearly established federal law). Because the factual basis supporting Petitioner's

claim of alleged conflict has nothing to do with multiple concurrent representation and does not otherwise involve "comparable difficulties," it falls outside the scope of the *Sullivan* decision.[8]

As an alternative to relief under *Sullivan*, Petitioner could have attempted to show ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 687-89 (1984). Unlike the *Sullivan* standard which allows for a presumption of prejudice if an actual conflict of interest adversely affected counsel's performance, *Strickland* requires a showing of both deficient performance and prejudice. To establish deficient performance, a petitioner must show that his counsel's performance fell below the wide range of reasonably competent performance under prevailing professional norms. *Id.* To establish prejudice, a petitioner must show that but for counsel's deficient performance, there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial or, alternatively, would have been permitted to withdraw his guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (applying *Strickland* to review ineffective assistance of counsel claims in the context of guilty pleas); *see also Garcia v. Bravo*, 181 Fed. Appx. 725, 731 (10th Cir. May 23, 2006) (unpublished op.) (applying *Strickland* and finding no

---

[8]Moreover, even if *Sullivan* were to apply, Petitioner has not demonstrated an actual conflict of interest and, therefore, his claim must fail. *See Mickens*, 535 U.S. at 175 ("Until [ ] a defendant shows that his counsel *actively represented* conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.") (*quoting Sullivan*, 446 U.S. at 350) (emphasis added in *Mickens*). As the OCCA found, despite the appearance on Petitioner's behalf at the arraignment, the record contains no information indicating that Mr. Gutteridge ever discussed the merits of Petitioner's case or was involved in plea negotiations. As Respondent correctly contends, Petitioner has failed to rebut the OCCA's factual finding by clear and convincing evidence.

reasonable probability that state court would have permitted petitioner to withdraw his guilty plea).

However, there is no indication that Petitioner brought a claim pursuant to *Strickland*. As the Tenth Circuit has recognized, the Sixth Amendment right to conflict-free counsel "though conceptually related, is separate and distinct from the right to effective performance of counsel that is analyzed under the two-pronged *Strickland* test, and it is governed by different standards." *Deiterman v. Kansas*, 291 Fed. Appx. 153, 161 (10th Cir. Aug. 27, 2008) (unpublished op.).  Review of Petitioner's third ground for relief, therefore, is limited to, and governed by *Sullivan*.  *Compare United States v. Ohiri*, 287 Fed. Appx. 32, 38 (10th Cir. July 11, 2008) (unpublished op.) (limiting review of request for COA to ineffective assistance of counsel claim based on actual conflict of interest under *Sullivan* standard and not broader *Strickland* standard where claim on which COA was granted was not premised on *Strickland*); *see also Lindsey v. Estep*, 287 Fed. Appx 644, 647 (10th Cir. July 11, 2008) (unpublished op.) (finding petitioner failed to exhaust ineffective assistance claim based on actual conflict of interest even though petitioner raised argument before state court that counsel was ineffective under traditional two-prong *Strickland* standard) (*citing Smallwood v. Gibson*, 191 F.3d 1257, 1267 (10th Cir. 1999) (holding that petitioner failed to exhaust state remedies when he based ineffective assistance of counsel claim in habeas petition on different reasons than those presented in state direct appeal)).  In addition, Petitioner has not demonstrated entitlement to habeas relief under the standard of *Strickland*.  Petitioner

submitted no argument addressing the prejudice component of a *Strickland* claim instead claiming "he is not required to show prejudice."  *See* Brief of Petitioner at 13.

In sum, the United States Supreme Court has not extended *Sullivan* to the factual circumstances which serve as the basis for Petitioner's claim that he was denied the Sixth Amendment right to conflict-free counsel.  "The absence of clearly established federal law is dispositive under § 2254(d)(1), *see House*, 527 F.3d at 1018, and requires that habeas relief be denied as to the claim raised in Ground Three of the Petition.

## RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus [Doc. #1] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objections must be filed with the Clerk of the District Court by August   19th  , 2009.  *See* Local Civil Rule 72.1.  Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all matters referred by the District Judge in this case and terminates the referral.

DATED this __30th__ day of July, 2009.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE